On this appeal from an order of Judge Nancy Margaret Russo, I respectfully dissent from the majority's decision on the first assignment of error and would find the other assignments of error moot. The majority has ranged far and wide for decisions that only arguably support its position, while failing to analyze relevant decisions of this court. I believe that Pickett's detention was an arrest under any reasoned view of the facts and the law.
An arrest is based on the existence of four elements:
 1) An intent to arrest, 2) under real or pretended authority, 3) accompanied by an actual or constructive seizure or detention of the person, and 4) which is so understood by the person arrested. State v. Barker (1978), 53 Ohio St.2d 135, 372 N.E.2d 1324, paragraph one of the syllabus.
There is little dispute on any element other than the officer's intent to arrest Pickett. Despite the officer's denial, the question of intent to arrest must be an objective determination; otherwise a police officer's testimony would always control the analysis. When the validity of a search depends on it being incident to an arrest, a police officer could testify to possessing the requisite intent; in a case such as this, where there is no probable cause to arrest, a police officer can deny intent and attempt to justify his conduct on other grounds.
Prior decisions of this court show that we consider the intent to arrest to be an objective determination, and that the circumstances here show such intent. In State v. McFarland (1982),4 Ohio App.3d 158, 446 N.E.2d 1168, this court approved the detention of a suspect in the back seat of a police car, with his hands placed in sight through the protective screen between the front and back seats, while the officer conducted a check for outstanding warrants. Id. at 161, 446 N.E.2d at 1172. At that time, this court ruled that the restraint on the suspect was reasonable under the circumstances, and did not amount to an arrest. Subsequently, in State v. Nelson (1991),72 Ohio App.3d 506, 595 N.E.2d 475, this court came to a different conclusion where a police officer apprehended two suspects by chasing them into an alley, finding that the officer's act of handcuffing manifested his intent to arrest the suspects. Id. at 509, 595 N.E.2d at 476.
The facts of this case more closely resemble those in Nelson. Furthermore, Nelson represents an identifiable distinction to guide police officers and courts in determining the existence of an arrest. By finding that the officer's conduct manifested an intent to arrest, the Nelson court recognized that intent must be determined objectively. The Nelson court next drew a distinction between the act of handcuffing non-threatening suspects for interrogation and McFarland's temporary restriction pending a warrant check. A warrant check is a discrete and limited activity for which temporary detention and restraint can be justified. When the warrant check is completed, the suspect is arrested or released. On the other hand, questioning a suspect is an open-ended exercise of indefinite duration. The act of handcuffing a suspect prior to questioning adds significantly to the coercive atmosphere already in place. In this case, the officer not only handcuffed Pickett, but read her Miranda rights as well.
Although handcuffing a suspect during a Terry stop may be justified where the officer reasonably fears assault, the Nelson court recognized that an officer cannot use handcuffs to detain non-threatening suspects for questioning. The scope of an investigatory stop must be related to the strength of the officer's suspicion, the temporal proximity between the stop and the suspected crime, and the seriousness of the crime suspected. McFarland, 4 Ohio App.3d at 159-160,446 N.E.2d at 1171. The officer's suspicions that Pickett was conducting drug transactions and possessing drugs at the time of the stop were insufficient to justify the scope of his intrusion under Terry. Although Pickett initially tried to flee, there was no evidence that she posed a physical danger to the officer, or that she posed a continued threat to flee after being caught. Pickett was not suspected of violence, and her activities at no time indicated that she was any threat to assault the officer. Handcuffing Pickett, forcing her into the back of a police car, and reading her Miranda rights in order to question her was beyond the reasonable and necessary scope of the stop.
Because this court has already provided guidance on this issue through Nelson, I find the majority's reliance on cases outside this district unpersuasive. Furthermore, the cases the majority relies upon are those that approve handcuffing in circumstances where violence was a distinct possibility, where the officer needed to transport the suspect for immediate identification by eyewitnesses to a recent crime, or where the officer needed to detain one suspect while attempting to capture another. See, e.g., State v. Mays (1995),104 Ohio App.3d 241, 248-49, 661 N.E.2d 791, 795-96
(specifically relying on cases finding detention to transport suspect for identification reasonable); United States v. Miller (C.A.8, 1992), 974 F.2d 953, 957
(handcuffing reasonable where suspects outnumbered officers, and officers needed to go to airport baggage claim to obtain suspect's bags); United States v. Glenna (C.A.7, 1989), 878 F.2d 967, 972-73 (although normally too invasive for a Terry stop, handcuffing reasonable when suspect is reputed to be armed and weapons search reveals possession of ammunition and explosive cherry bomb.); United States v. Crittendon (C.A.4, 1989), 883 F.2d 326,329 (officer observed shoulder holster indicating suspect was armed, and could have been called away at any time to help detain second suspect); United States v. Laing (C.A.D.C., 1989), 889 F.2d 281, 286 (handcuffing reasonable when officers had information that suspect was armed).
Furthermore, the majority's reliance on State v. Broomfield (Sept. 13, 1996), Clark App. No. 95-CA-0103, unreported, also fails to capture the events in this case. The Broomfield court held only that the act of reading Miranda rights to a suspect did not per se turn her detention into an arrest, finding that this and other acts such as handcuffing, standing alone, did not transform an investigative detention into an arrest. Unlike Broomfield, the acts here do not stand alone. Pickett was apprehended, handcuffed, given her Miranda rights, and forced (rather than asked) into the back of a police car. In addition, while the suspect in Broomfield was suspected of trafficking substantial amounts of drugs, Pickett was suspected of a less serious offense.
None of the circumstances authorizing the intrusion in the majority's cited cases is present here. I believe that where the officer's safety is not threatened and the suspect no longer poses a risk of flight, Nelson holds that handcuffing a suspect for questioning is unreasonably intrusive and coercive. The officer's conduct here is not justifiable under Terry and shows an objective intent to arrest Pickett. The evidence seized, therefore, is inadmissible because Pickett was arrested without probable cause. I would reverse the judge's order denying the motion to suppress.